UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOHN BRYANT,                                  :

                                                                    REPORT & RECOMMENDATION
                        Plaintiff,            :            09 Civ. 2456 (GBD) (GWG)

        -v.-                                  :

LESTER WRIGHT M.D., et al.                    :

                        Defendant.            :
-----------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Plaintiff, John Bryant, proceeding pro se, brings this suit under 42 U.S.C. § 1983 alleging

that three doctors employed by the Department of Correctional Services ("DOCS"), including

two doctors at the Sing Sing Correctional Facility, were deliberately indifferent to his medical

needs.  The defendants have moved to dismiss on several grounds, including exhaustion.  For the

following reasons, the defendants' motion should be denied as to exhaustion but granted on the

merits, with Bryant given leave to replead.

I.        BACKGROUND

        A.        Procedural History

_____Bryant filed his complaint on March 18, 2009.  See Complaint under the Civil Rights

Act, 42 U.S.C. § 1983, filed Mar. 18, 2009 (Docket # 2) ("Compl.").  On September 25, 2009,

defendants filed a motion to dismiss.  See Notice of Motion to Dismiss, filed Sept. 25, 2009

(Docket # 13); Memorandum of Law in Support of Defendants' Motion to Dismiss, filed Sept.

25, 2009 (Docket # 14) ("Def. Mem."); Notice to Pro Se Litigant Motion to Dismiss Treated as

Motion for Summary Judgment, filed Sept. 25, 2005 (Docket #15) ("Notice to Pro Se Litigant").

Bryant submitted opposition papers on October 9, 2009.  See Affirmation in Opposition to

Motion, filed Oct. 9, 2009 (Docket # 17) ("Pl. Aff.").  Defendants filed a reply on November 2,

2009.  See Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss,

filed Nov. 2, 2009 (Docket # 18) ("Reply").   The case was referred to the undersigned on July

23, 2010.  See Order Referring Case to Magistrate Judge, filed July 23, 2010 (Docket # 19).

      B.      <u>Bryant's Allegations</u>

      The Court assumes the allegations in plaintiff's complaint are true for purposes of

deciding the defendants' motion to dismiss.  Also, in light of Bryant's pro se status, the Court

will consider the factual allegations contained in his affirmation submitted in response to the

defendants' motion, along with the medical records annexed to that affirmation.  <u>See</u>, <u>e.g.</u>,

<u>Woods v. Goord</u>, 2002 WL 731691, at *1 n.2 (S.D.N.Y. Apr. 23, 2002) (considering pro se

prisoner's factual allegations in briefs as supplementing the complaint); <u>Burgess v. Goord</u>, 1999

WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999) ("In general, 'a court may not look outside the

pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the

papers of pro se litigants generously makes it appropriate to consider plaintiff's additional

materials, such as his opposition memorandum.'" (quoting <u>Gadson v. Goord</u>, 1997 WL 714878,

at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citations omitted)).

      In July 2005, Bryant was an inmate at the Sing Sing Correctional Facility.  <u>See</u> Compl. at

3; Pl. Aff. at 3.  Around that time, he was diagnosed with Hepatitis C and an outside infectious

disease specialist prescribed a one-year treatment of Ribavirin capsules and Interferon injections.

<u>See</u> <u>id.</u>

      A few months into treatment, medical staff "arbitrarily" switched the Ribavirin capsules

to a generic brand, which "is said to cause numerous side effects."  Pl. Aff. at 3.  Following the

change, Bryant began to suffer symptoms that he attributes to the generic prescription.  <u>Id.</u>  He

alleges that "[i]n just a few weeks, my entire body began to blister and swell, then pimples, that turned into terrible dark rashes, that covered my body from head to toes [sic]."  Compl. at 3.

While Bryant states that defendants responded to his complaints by stating "not to worry, it is not a big deal, it will go away," he also alleges that the defendants gave him "numerous creams [and] medications," though he contends that this was done merely in an effort "to pacify him."  Opposition Argument of Point III (Ex. B to Pl. Aff. at 16) ("Pl. Opp. III") ¶¶ 4, 6.  He alleges that the defendants "knowingly saw [that] none of their so called miracle creams were working and still did nothing to relieve plaintiff's pain and suffering."  Id. ¶ 5.

Dr. Bakshi was "in charge of monitoring" Bryant "during his treatment and providing the proper medical services needed."  Opposition Argument of Point II (Ex. A to Pl. Aff. at 18) ("Pl. Opp. II") ¶ 2.  Bryant contends that Dr. Bakshi, knowing that his "condition was [deteriorating,] was obligated to notify his superiors and or do everything in his [capacity] to help."  Pl. Opp. III ¶ 2. After complaining to Dr. Bakshi "about these symptoms," Dr. Bakshi "encouraged [him] to stick with the treatment."  Pl. Aff. at 3.  "Dr. Bakshi prescribed a moisturizing [lotion] . . . claiming [that] it was 'just dry skin.'"  Id.  However, this did not provide any relief, and Bryant complained to Dr. Bakshi that his condition was worsening.  Id.

With respect to Dr. John Perilli, the facility's head medical officer, Bryant alleges that he informed Bryant that "he had nothing to do with the change" in medication as the decision "came directly from [the] 'Central Office DOCS Health Services.'"  Compl. at 3.  Bryant contends that Dr. Perilli had to approve all treatment and medication prescribed to inmates.  See Pl. Opp. III ¶ 3. Lastly, Bryant alleges that, according to Dr. Perilli, Dr. Lester Wright, the Deputy Commissioner of Health Services for DOCS, changed the treatment protocol for

3

Hepatitis C to replace Ribavirin with a generic medication.  See Pl. Aff. at 4.  Bryant contends that Dr. Wright, like Dr. Perilli, had final approval over all treatments and prescriptions.  See Pl. Opp. III ¶ 3.

In December 2006, after mailing letters to outside agencies and filing several grievances, Bryant was seen by a dermatologist, who "ordered a skin biopsy" and prescribed steroid injections.  Compl. at 3; Pl. Aff. at 4; Inmate Grievance Complaint-42185, dated Dec. 15, 2006 (Ex. A to Pl. Aff. at 1).  He alleges that this "proves that the defendants were [indifferent] to [his] suffering until the pressure on them was too much."  Pl. Aff. at 4.

According to Bryant's medical records  (annexed as Ex. C to Pl. Aff and hereinafter cited as "Medcial Record"), the medical staff first recorded "boils" developing on his skin on February 7, 2006.  See Medical Record, dated Feb. 7, 2006 (Ex. C at 9).  Starting in March 2006, records reflect that Bryant was prescribed topical treatments and examined regularly by facility medical staff.  See, e.g., Medical Records at 3-27.  In July 2006, medical records include notations that Bryant exhibited a rash, see Medical Record, dated July 10, 2006 (Ex. C at 20), that became progressively worse in December 2006, see Medical Record, dated Dec. 22, 2006 (Ex. C. at 22) ("Dec. 22, 2006 Medical Record").  In a medical record from September 12, 2006, a staff member recorded that Bryant had developed "numerous lesions on [his] back."  Medical Record, dated Sept. 12, 2006 (Ex. C at 21).  In an undated record immediately following, he or she ordered "meds" and for Bryant to avoid sun-exposure.  Medical Record, undated (Ex. C at 21).  In a medical record dated December 21, 2006, the examining physician ordered a dermatologist consult, see Medical Record, dated Dec. 21, 2006 (Ex. C at 22) and in a record dated December 22, 2006, stated that he would be put on a trial steroid treatment, see Dec. 22,

2006 Medical Record.

Bryant alleges that he sustained "scar[r]ing on 75% of [his] body" from "the severe skin rashes." Compl. at 3. Consequently, his "body aches and itches" constantly and he has trouble sleeping due to "extreme discomfort." Id. Bryant seeks monetary compensation of $2 million. See Compl. at 5.

II.   DISCUSSION

A.   Exhaustion

Defendants have moved to dismiss on the ground that Bryant has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Def. Mem. at 3.

1.   Standard of Review

While the defendants have moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), they have also submitted affidavits in support of their motion on the issue of exhaustion. Where such materials are considered by a court, "the motion must be treated as one for summary judgment," disposed of as provided in Fed. R. Civ. P. 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); accord Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000) (where materials outside the pleadings are presented on a motion to dismiss, a court "must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material") (citations and internal quotations omitted).

In accordance with Local Civil Rule 12.1, the defendants served plaintiff with a "Notice

to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings."
<u>See</u> Notice to Pro Se Litigant at 1-2.  That notice warned plaintiff that this Court might treat the
defendants' motion as a motion for summary judgment under Fed. R. Civ. P. 56 and informed
the plaintiff of his obligation to submit evidence.  <u>Id.</u>  It also informed plaintiff that if he did not
provide "affidavits or documentary evidence contradicting the facts asserted by the defendants,
the Court may accept defendants factual assertions as true."  <u>Id.</u> at 2.  Accordingly, we treat the
defendants' motion as one for summary judgment on the issue of exhaustion.

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is
appropriate when "the pleadings, the discovery and disclosure materials on file, and any
affidavits show that there is no genuine issue as to any material fact and that the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A genuine issue of material
fact "may reasonably be resolved in favor of either party" and thus should be left to the finder of
fact.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).

When determining whether a genuine issue of material fact exists, courts must resolve all
ambiguities and draw all factual inferences in favor of the non-moving party.  <u>Id.</u> at 255 (citing
<u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970)).  Nevertheless, once the moving
party has shown that there is no genuine issue as to any material fact and that it is entitled to a
judgment as a matter of law, the "nonmoving party must come forward with 'specific facts
showing that there is a <u>genuine issue for trial</u>,'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>
<u>Corp.</u>, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on
conclusory allegations or unsubstantiated speculation," <u>Jeffreys v. City of N.Y.</u>, 426 F.3d 549,
554 (2d Cir. 2005) (citation and internal quotation marks omitted).  In other words, the

non-movant must offer "concrete evidence from which a reasonable juror could return a verdict

in his favor." Anderson, 477 U.S. at 256.  Where "the nonmoving party bears the burden of

proof at trial, summary judgment is warranted if the nonmovant fails to make a showing

sufficient to establish the existence of an element essential to its case." Nebraska v. Wyoming,

507 U.S. 584, 590 (1993) (citation, internal quotation marks, and brackets omitted).  Thus, "[a]

defendant moving for summary judgment must prevail if the plaintiff fails to come forward with

enough evidence to create a genuine factual issue to be tried with respect to an element essential

to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citation omitted); accord

Feurtado v. City of N.Y., 337 F. Supp. 2d 593, 599-600 (S.D.N.Y. 2004).

> 2.  Requirements of the PLRA

The PLRA provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a).  In New York, state prisoners who wish to complain about prison

conditions must comply with the three-step grievance and appeal procedure outlined in the

Inmate Grievance Program.  See N.Y. Comp. Codes R. & Regs. tit. 7 ("7 N.Y.C.R.R."), § 701.5.

In brief, an inmate must first file a complaint with the Inmate Grievance Resolution Committee.

Id. § 701.5(a)-(b).  After receiving a response, the inmate must, if he disagrees with the decision,

appeal to the superintendent of the facility.  Id. § 701.5(c).  After receiving a response from the

superintendent, the prisoner must seek any review of the superintendent's decision with the

central office review committee ("the CORC").  Id. § 701.5(d).  "[A] prisoner has not exhausted

his administrative remedies until he goes through all three levels of the grievance procedure."

Varela v. Demmon, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007) (citations and internal

punctuation omitted); see also Espinal v. Goord, 558 F.3d 119, 125-26 (2d Cir. 2009) (describing

DOCS grievance procedure).

Under the PLRA, a prisoner must exhaust his available administrative remedies prior to

bringing suit.  42 U.S.C. § 1997e(a); see also Porter v. Nussle, 534 U.S. 516, 524 (2002) ("All

'available' remedies must now be exhausted; those remedies need not meet federal standards,

nor must they be 'plain, speedy, and effective.'") (citations omitted).  In addition, the exhaustion

must be "[p]roper" – that is, "compl[y] with an agency's deadlines and other critical procedural

rules because no adjudicative system can function effectively without imposing some orderly

structure on the course of its proceedings."  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense, see Jones

v. Bock, 549 U.S. 199, 216 (2007), and thus the defendants have the burden of proving that

Bryant's claims have not been exhausted.  See, e.g., Key v. Toussaint, 660 F. Supp. 2d 518, 523

(S.D.N.Y. 2009) (citations omitted).

> 3.      Evidence on Exhaustion

Defendants contend that Bryant failed to appeal his complaints to the CORC and

therefore failed to exhaust his administrative remedies.  See Def. Mem. at 6-9.  They submit

affidavits from DOCS officials stating that a review of the facility and DOCS' computer records

show no entry verifying that Bryant appealed the superintendent's decision to the CORC.  See

Declaration of Frank Robinson (annexed to Notice of Motion) ("Robinson Decl.") ¶ 8;

Declaration of Karen Bellamy (annexed to Notice of Motion) ("Bellamy Decl.") ¶ 5.  They also

submit copies of computer records that contain no entry showing that Bryant filed an appeal to

the CORC.  See Grievance Clerk's Log (Form 2136) (annexed as Ex. A  to Robinson Decl.);

Grievance Clerk's Log (Form 2136) (annexed as Ex. B to Robinson Decl.); Print-Out (annexed

as Ex. A to Bellamy Decl.).  Robinson also states that he advised Bryant to "submit the appeal

form" in order to complete the process, but that Bryant "never provided [him] with a copy of any

appeal to CORC regarding this matter."  Robinson Decl. ¶ 10.

       For his part, Bryant contends that he "used every effort available to him to exhaust all

administrative remedies."  Opposition Argument Point I (annexed to Pl. Aff.) ("Pl. Opp. I.") ¶ 9.

On December 15, 2006, Bryant filed a grievance regarding the decision to change his medication

to a generic brand.  See id. ¶ 2.  On January 9, 2007, he appealed the IGRC's response to the

superintendent, see Grievance: 42185-06, dated Jan 9, 2007 (Ex. A to Pl. Aff. at 3), to which the

superintendent responded on January 16, 2007, see Decision, dated Jan. 16, 2007 (Ex. A to Pl.

Aff. at 2).  Bryant claims he immediately "appealed [it] to CORC by forwarding it to the IGRC

clerk," but that the "[a]ppeal never made it to CORC."  Pl. Opp I ¶ 4.

       On October 7, 2008, Bryant filed a second grievance complaining that his condition had

not improved since seeing a dermatologist.  See Pl. Opp I ¶ 5; Inmate Grievance Complaint

45187, dated Oct. 7, 2008 (Ex. A to Pl. Aff. at 5).  The grievance was denied on October 16,

2008, and Bryant appealed it on October 17, 2008.  See Grievance: 45187-08 (Ex. A to Pl. Aff.

at 7).  On October 29, 2008, the superintendent accepted the grievance and encouraged Bryant

"to work with the dermatologist and his assigned medical provider."  Decision, dated Oct. 29,

2008 (Ex. A to Pl. Aff. at 6).  Bryant asserts that he "promptly appealed" the decision to the

CORC "by forwarding it to the IGRC clerk."  See Pl. Opp. I. ¶ 7.

On December 31, 2008, Bryant wrote to the Deputy Commissioner for Administrative Services complaining that he had mailed his appeal on October 30, 2008, per instructions from the inmate grievance clerk, but had not heard back.  See Letter from John Bryant, dated Dec. 31, 2008 (Ex. A to Pl. Aff at 9).  On January 16, 2009, Karen Bellamy, Director of the Inmate Grievance Program, responded that Bryant's CORC appeal was never received.  See Letter from Karen Bellamy, dated Jan. 16, 2009 (Ex. A to Pl. Aff. at 11).  Bryant wrote two letters, one to Superintendent Brown, dated January 30, 2009, and one to Brian S. Fischer, Commissioner of the Department of Correctional Services, dated February 10, 2009, accusing Frank Robinson, Supervisor of the Inmate Grievance Program, of "hampering [his] attempts at filing [his] appeal and grievance."  Letter from John Bryant, dated Feb. 10, 2009 (Ex. A to Pl. Aff. at 15); see also Letter from John Bryant, dated Jan. 30, 2009 (Ex. A to Pl. Aff. at 13).   On March 2, 2009, Bellamy responded to Bryant's February 10, 2009 letter.  Bellamy stated that based on her communications with the facility, she had concluded that he had not filed an appeal to the superintendent's decision; she encouraged him to file a grievance regarding the mishandling of his prior complaints.  See Letter from Karen Bellamy (Ex. A to Pl. Aff. at 16).

    4.  Analysis

    While defendants have provided evidence that Bryant failed to exhaust his claims by appealing to the CORC, Bryant has provided evidence to the contrary.  Specifically, Bryant asserts that he in fact submitted both of his appeals to the grievance clerk.  And, under DOCS regulations, it is the grievance clerk who is responsible for transmitting the appeal and the accompanying grievance papers to the "IGP supervisor," who must then forward the appeal to the CORC.  See 7 N.Y.C.R.R. § 701.5(d)(1)(ii).  Thus, if Bryant's account is credited, as it must

10

be on a motion for summary judgment, he did all that was required to exhaust under the regulations.

Defendants fault Bryant for "initiat[ing] his lawsuit before receiving a response" to his letters complaining that his previous appeals to the CORC were lost or misplaced by staff. Reply at 3.  But if Bryant in fact followed the DOCS procedure for exhausting at all three levels, there was nothing improper about instituting the lawsuit.  Moreover, he spoke with Frank Robinson, Supervisor of the Inmate Grievance Program, in January 2009, prior to submitting his complaint, and was told that his appeals "were indeed missing and ther[e] was nothing to be done about it."  Pl. Opp. I. ¶ 14.  He had also received a letter from Karen Bellamy, Director of the Inmate Grievance Program, confirming that the CORC had no record of his appeals.  See id. ¶ 13.

Because there is a factual dispute as to whether Bryant followed the inmate grievance procedures, the Court cannot grant defendants summary judgment on this question. Accordingly, we now consider the defendants' motion to dismiss Bryant's complaint for failure to state a claim.

      B.     Motion to Dismiss for Failure to State a Claim

           1.    Legal Standard Governing a Motion to Dismiss

A party may move for judgment pursuant to Federal Rule of Civil Procedure 12(b)(6) where the opposing party has "fail[ed] to state a claim upon which relief can be granted." Separately, Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Under this rule, a complaint "must simply 'give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests.'" <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 237 (2d Cir. 2007) (quoting <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512 (2002)).

Nonetheless, the Supreme Court has held that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level . . . ." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations, internal quotation marks, and brackets omitted); <u>see</u> <u>also</u> 550 U.S. at 557 (pleading must "possess enough heft to show that the pleader is entitled to relief") (citations, internal quotation marks, and brackets omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citation and internal quotation marks omitted); <u>accord</u> <u>Port Dock & Stone Corp. v. Oldcastle Ne., Inc.</u>, 507 F.3d 117, 121 (2d Cir. 2007) ("a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion") (citations omitted).

In the case of pro se plaintiffs, "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted); <u>accord</u> <u>In re Sims</u>, 534 F.3d 117, 133 (2d Cir. 2008); <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be construed liberally and interpreted "'to raise the strongest arguments that they suggest'") (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)).

2.      <u>Deliberate Indifference under 42 U.S.C. Section 1983</u>

a.    <u>Applicable Law</u>

To state a claim under section 1983, Bryant must show that he was denied a constitutional or federal statutory right and that the deprivation of such right occurred under color of state law.  <u>See</u> 42 U.S.C. § 1983; <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  Section 1983 does not grant any substantive rights but rather "provides a procedure for redress for the deprivation of rights established elsewhere," such as in the Constitution or federal statutes.  <u>See</u> <u>Sykes v. James</u>, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), <u>cert.</u> <u>denied</u>, 512 U.S. 1240 (1994).  Finally, "it is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006) (quoting <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994)).  To establish a violation of the Eighth Amendment arising out of inadequate medical treatment, a prisoner is required to prove "deliberate indifference to [his] serious medical needs."  <u>Estelle</u>, 429 U.S. at 106.  The deliberate indifference standard consists of both a subjective prong and an objective prong.  <u>See</u> <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994), <u>cert.</u> <u>denied</u>, 513 U.S. 1154 (1995).

Under the subjective component, the prisoner must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving the prisoner of adequate medical treatment.  <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996).  The "subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"  <u>Id.</u> (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994)) (alterations in original); <u>see</u>

13

also Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (likening the necessary state of mind to "the equivalent of criminal recklessness") (citation and internal quotation marks omitted), cert. denied, 543 U.S. 1093 (2005); Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir.1998) (per curiam) (same).  In order to be found "sufficiently culpable," the official must "know[ ] of and disregard [ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837; accord Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009).

Under the objective prong, the alleged medical need must be "sufficiently serious." Hathaway, 37 F.3d at 66 (citation and internal quotation marks omitted).  A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  Id. (citation and internal quotation marks omitted). "Factors that have been considered include 'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted).

        b.    Analysis.

Bryant makes essentially two allegations against the defendants to support his deliberate indifference claim: (1) that the change of his hepatitis prescription to a generic brand caused his skin ailments and (2) that the medical staff was aware that the treatment for the skin ailments was ineffective.  See Compl. at 3; Pl. Opp. II ¶¶ 1-7; Pl. Opp. III ¶¶ 3-5.  We address the subjective prong of the deliberate indifference analysis first because it is dispositive here.

"[I]t is well-established" that a prisoner's "mere disagreement over the proper treatment does not create a constitutional claim." Chance, 143 F.3d at 703.  Moreover, a claim of "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.  Nevertheless, the Second Circuit has recognized that "certain instances of medical malpractice may rise to the level of deliberate indifference" where "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" Hathaway, 99 F.3d at 553 (citation omitted).   For example, "[i]n certain instances, a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan.'" Chance, 143 F.3d at 703 (citing Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974)); see also Greeno v. Daley, 414 F.3d 645, 654 (7th Cir. 2005) (deliberate indifference found where the treatment "receive[d] was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate [plaintiff's] condition" (citation and internal quotation marks omitted);  Allen v. Montgomery Cnty., 2009 WL 4042761, at *7 (E.D.Pa. Nov. 19, 2009) (deliberate indifference found where medical staff instituted or continued a course of treatment that they knew, or should have known, would be ineffective).

Here, while Bryant makes the conclusory allegation that his skin condition was caused by the switch to the generic drug, there is no allegation that any of the three doctors sued knew in advance that use of the generic drug would cause the condition Bryant subsequently suffered. Indeed, cases have held that prescribing a prisoner a generic brand of medication, without more, does not show a constitutional violation.  See, e.g., Robinson v. Edwards, 2006 WL 1889900, at *10 (S.D.N.Y. July 5, 2006) (prisoner's complaint that "he receives generic rather than brand

15

name medicines" amounts only to a disagreement over treatment, not a constitutional violation) (citation omitted); see also Franklin v. Bearden, 2009 WL 3052613, at *7 (D.S.C. Sept. 23, 2009) (no constitutional violation where prisoner alleged that medical defendants "refused to provide him specific medications he requested, and instead provided him with other medications").  The mere fact that the generic medication has "side effects," Compl. at 3, is certainly insufficient to state a deliberate indifference claim inasmuch as most prescription medications have side effects and there is no explanation as to whether the non-generic version of the drug also has side effects.

Additionally, while Bryant alleges that the treatments offered for his skin condition were ineffective, the complaint and attached papers cannot plausibly be read to suggest that Bryant was not examined, treated, or administered medically-indicated tests – situations that case law has found to constitute deliberate indifference.  See, e.g., Abraham v. DiGugleilmo, 2010 WL 2136600, at *9 (E.D.Pa. May 25, 2010) (doctor's decision to prescribe plaintiff antibiotics "without examining plaintiff or administering tests to confirm the diagnoses" was found to constitute deliberate indifference); Verley v. Goord, 2004 WL 526740, at *13 (S.D.N.Y. Jan. 23, 2004) (doctor ignored indications on x-rays suggesting nerve damage that should have indicated a need for further tests was found to constitute deliberate indifference).  The medical records Bryant has supplied with his opposition papers reflect that he was examined approximately 50 times between July 2005 and February 2007 and regularly prescribed medication to combat his skin condition.  See Medical Records (Ex. C. at 3-23).   Indeed, Bryant himself alleges that he was prescribed medications for his condition.  Compl. at 3; Pl. Opp. III ¶ 4.  The mere allegation that Bryant had a painful skin condition that was not alleviated by the treatments does not by

16

itself reflect that the defendant doctors acted with deliberate indifference as there exist many medical conditions that do not respond to treatment.

Moreover, it cannot be said that Dr. Bakshi or the other doctors acted with deliberate indifference when they did not immediately have Bryant examined by a dermatologist.  As an initial matter, plaintiff's complaint does not even allege that the dermatological treatments ordered, consisting of steroid injections, have been effective inasmuch as Bryant alleges that he still has symptoms of his skin condition.  Compl. at 3.  Thus, the timing of the referral does not reflect that the defendants harmed Bryant through any delay.  In any event, the mere allegation that there was a delay in the referral to a dermatologist is not enough to state a deliberate indifference claim.  A delay in treatment results in a constitutional violation only if the failure to treat reflects "a conscious disregard of a substantial risk of serious harm."  Chance, 143 F.3d at 703.  While Bryant alleges that he was referred only after complaining, there are no facts alleged to suggest that the repeated treatments given to him reflected such a conscious disregard.

A similar conclusion was reached in Libbett v. Doody, 686 F. Supp. 2d 271 (W.D.N.Y. 2010), in which the district court held that the complaint did not allege deliberate indifference merely because the inmate was not seen by an orthopedist after the inmate suffered a fall but was instead prescribed pain medication.  Id. at 274, 277.  After "repeatedly inform[ing]" one of the defendants about "his continued pain over the following weeks and months," plaintiff was evaluated by an orthopedic specialist who informed him "that he would need two months of physical therapy to alleviate his severe muscle spasms."  Id.  Nevertheless, the district court found no Eighth Amendment violation noting that the defendant "did provide [plaintiff] with some treatment."  686 F. Supp. 2d at 278.  Though the plaintiff was "dissatisfied with the

17

treatment that he received," which was "not as effective as he would have liked" and was not given "as quickly as he would have preferred," the district court nevertheless found "[a]t most, plaintiff has alleged that defendants were negligent in their treatment of his injuries." Id.; see also Alston v. Bendheim, 672 F. Supp. 2d 378, 386-87 (S.D.N.Y. 2009) (plaintiff failed to allege sufficient facts that defendant "was aware that a substantial risk of harm to Plaintiff's health existed" where defendant "did not disregard Plaintiff's complaints but took action in response to them").[1]

In sum, Bryant has not pled facts showing that the subjective prong of the deliberate indifference standard is met.

Conclusion

For the foregoing reasons, the motion to dismiss (Docket # 13) should be granted with leave to amend within 30 days in the event that Bryant can cure any of the defects in the existing complaint.  See, e.g., Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.") (citation omitted).

---

[1] Because section 1983 liability cannot be imposed upon a state official based on a theory of respondeat superior, see, e.g., Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995), it is unnecessary to reach the question of whether Bryant's allegations show the requisite personal involvement of each of the three named defendants.  See, e.g., Reddick v. Lantz, 2010 WL 1286992, at *6 (D. Conn. Mar. 29, 2010) ("Absent an underlying constitutional violation, there is no cognizable claim for supervisory liability.") (citation omitted); accord Dorsey v. Fisher, 2010 WL 2008966, at *12 (N.D.N.Y. May 19, 2010) (citing cases); D'Angelo-Fenton v. Town of Carmel, 470 F. Supp. 2d 387, 399 (S.D.N.Y. 2007).

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a),

(b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. George B. Daniels, and to the undersigned, at 500 Pearl

Street, New York, New York 10007.  Any request for an extension of time to file objections

must be directed to Judge Daniels.  If a party fails to file timely objections, that party will not be

permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v.

Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham,

Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: August 31, 2010
       New York, New York

                                      _____

                                        GABRIEL W. GORENSTEIN
                                        United States Magistrate Judge

Copies sent to:

John Bryant
95-A-8540
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

Sabrina Jiggetts
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a),

(b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. George B. Daniels, and to the undersigned, at 500 Pearl

Street, New York, New York 10007. Any request for an extension of time to file objections

must be directed to Judge Daniels. If a party fails to file timely objections, that party will not be

permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v.

Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham,

Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: August 31, 2010
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

John Bryant
95-A-8540
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562